2001 ME 158

**Barbara CURTIS**

v.

**Lisa Gagne PORTER.**

Supreme Judicial Court of Maine.

Argued: April 11, 2001.
Decided: Nov. 15, 2001.

Karen E. Boston (orally), Sumner H. Lipman, Lipman & Katz, P.A., Augusta, for plaintiff.

Peter T. Marchesi (orally), Wheeler & Arey, P.A., Waterville, for defendant, Lisa Gagne–Porter.

Jed David, Jim Mitchell and Jed Davis, P.A., Augusta, for defendant, Ryan Fifield.

Allen Porter, South Windham, defendant pro se.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Barbara Curtis appeals from the judgment of the Superior Court (Kennebec County, *Atwood, J.*) granting Lisa Gagne's [1] amended motion for summary judgment on Curtis's claims for intentional infliction of emotional distress and negligent infliction of emotional distress. Curtis contends that the Superior Court erred in determining that Gagne was entitled to the judgment. We affirm the judgment in part and vacate in part.

I.  BACKGROUND

[¶ 2] Barbara Curtis is employed as a pizza delivery agent for Domino's Pizza. During one late-night delivery, she was lured to an empty house where she was assaulted and robbed. Curtis suffered serious injury to her face as a result of the assault. Alan Porter, then twenty-one, and Ryan Fifield, a juvenile, were later arrested for attacking and robbing Curtis. Porter ultimately pled guilty to aggravated assault and robbery and was incarcerated.[2] Fifield, who also participated in the theft but did not assault Curtis, was prosecuted in a juvenile proceeding and placed on probation. Curtis filed a civil suit against Porter, Fifield, and Lisa Gagne, a friend of Porter and Fifield, who had been with them before the robbery occurred. It is the liability of Gagne that is at issue here.

[¶ 3] The nature of Gagne's involvement in the robbery, if any, is disputed by the parties. Because this matter is before us as the result of the entry of a summary judgment, we consider only the facts recited and properly supported in the parties' statements of material facts. In the early evening hours of a summer night in 1995, Gagne, Porter, and Fifield began drinking malt liquor and beer at Gagne's house. By midnight, they were drunk and hungry. Porter called Domino's from Gagne's kitchen phone and ordered a pizza to be delivered to a different address, 15 Kendall Street in Augusta. The Kendall Street house, formerly owned by Gagne's grandmother, was vacant at the time.[3] When asked what she wanted on her pizza, Gagne asked for bacon. Gagne knew that Porter had no money when he ordered the pizza. Porter and Fifield left Gagne's house about twenty minutes after ordering

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. Although Gagne is now known as Lisa Gagne Porter, she will be referred to as "Gagne" because Gagne was her last name at the time of these events, and also to differentiate her from Allen Porter, a co-defendant, whom she married after these alleged events occurred.

2. The record does not reflect the specifics of Porter's sentence.

3. Gagne owns the house and began residing there subsequent to the incident. Gagne may have owned the house at the time of the incident, but was not aware of that fact at the time.

the pizza. On their way out, Gagne told them, "Don't get caught." [4] She did not go with them. She did not know Curtis, nor did she know that Curtis would deliver the pizza.

[¶ 4] Shortly thereafter, Curtis arrived at 15 Kendall Street to deliver the pizza. She rang the doorbell, but no one answered. Porter and Fifield then emerged from behind the house and said that they had ordered the pizza. When Curtis looked down to check the price on the pizza box, Porter hit her in the face and knocked her down. She heard shuffling and heard Porter run away as she lay on the ground bleeding and afraid to get up. Porter and Fifield ran back to Gagne's house with the stolen pizza and told Gagne to shut off the lights in the house. Gagne told Porter to throw the pizza boxes into the river, which he did. Later, Gagne lied to the police about several aspects of the events, asserting that Porter had nothing to do with this incident, that the incident never happened, that Porter was at home with her all night, that Porter would not do something like that, and that they did not order pizza.

[¶ 5] Three years later, Curtis filed her complaint against Gagne, Porter, and Fifield alleging assault, battery, robbery, and intentional infliction of emotional distress. Because the applicable statute of limita-

tions bars recovery more than two years after an assault or battery, 14 M.R.S.A. § 753 (Supp.2000), and because Maine does not recognize a separate civil action for robbery, Curtis filed an amended complaint abandoning these three claims. In the amended complaint, Curtis asserted claims for both negligent and intentional infliction of emotional distress,[5] and sought recovery for the emotional, but not the physical, harm she suffered during the assault.[6] The Superior Court entered a final judgment in favor of Gagne on Gagne's motion for summary judgment pursuant to M.R. Civ. P. 54(b)(1). This appeal followed.

## II. DISCUSSION

[¶ 6] We review motions for summary judgment for errors of law, viewing the evidence in the light most favorable to the nonprevailing party—in this case, Curtis— to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844; *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 620 (Me.1996).

■ [¶ 7] Summary judgment is no longer an extreme remedy.[7] It is simply a

4. There is some dispute over whether this statement is admissible. We do not need to determine its admissibility at this time; we need only determine that there is a reasonable likelihood that the statement would be admitted at trial. The unsworn statement of Fifield that included this remark by Gagne could be admitted as a past recollection recorded, to refresh his recollection, or to impeach with a prior inconsistent statement if Fifield testifies and gives a different version of the facts at trial. *See* M.R. Evid. 612, 801, 803.

5. Gagne does not contend that the statute of limitations bars recovery for the IIED and NIED claims arising out of the same opera-

tive facts as the torts that are now time barred.

6. Curtis also sought punitive damages in her complaint. Apparently recognizing the absence of facts directly connecting Gagne to the assault, however, Curtis's appeal does not address the elements necessary for a claim for punitive damages. Thus, we do not disturb the judgment on this issue.

7. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law. *Bouchard v. Am. Orthodontics,* 661 A.2d 1143, 1144–45 (Me.1995). The summary judgment process, however, is not a substitute for trial. If material facts are disputed, the dispute must be resolved through fact-finding, even though the nonmoving party's likelihood of success is small. *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.,* 2000 ME 214, ¶ 10, 763 A.2d 121, 124–25.

■ [¶ 8] When, as here, a defendant moves for summary judgment, the plaintiff "must establish a *prima facie* case for each element of her cause of action" that is properly challenged in the defendant's motion. *Champagne,* 1998 ME 87, ¶ 9, 711 A.2d at 845. Appellate review of the entry of a summary judgment requires the same analysis as that undertaken by the trial court. We first determine the elements of the causes of action at issue and then review the facts set forth in the parties' statements of material facts that are supported by appropriate record references.[8] *Gerrity Co., Inc. v. Lake Arrowhead Corp.,* 609 A.2d 293, 295 (Me.1992). Uncontroverted facts are accepted as true for the purpose of testing the propriety of a summary judgment. *Champagne,* 1998 ME 87, ¶ 5, 711 A.2d at 844.

[¶ 9] In addition to the specific facts set forth by the parties, we will consider any reasonable inferences that a fact-finder could draw from the given facts. *Hughes v. Beta Upsilon Bldg. Ass'n,* 619 A.2d 525, 526 (Me.1993). Although we will not speculate, we accord the nonmoving party "the full benefit of all favorable inferences that may be drawn" from the facts presented. *Id.* When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered. The parties here offer little dispute regarding the facts, but do dispute what reasonable inferences can be drawn from those facts in support of the elements of Curtis's claims.

## III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ [¶ 10] To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress, a plaintiff must present facts in support of each of the following four elements:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;

(2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";

(3) the actions of the defendant caused the plaintiff's emotional distress; and

---

'to secure the just speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 1). *Cf. Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.,* 627 A.2d 532, 534 (Me. 1993).

**8.** Effective January 1, 2001, M.R. Civ. P. 7(d)(1) was amended and incorporated into M.R. Civ. P. 56(h). *See Schindler v. Nilsen,* 2001 ME 58, ¶ 6, 770 A.2d 638, 641. Curtis has properly opposed Gagne's motion for summary judgment with a statement of material facts containing appropriate record references. *See* M.R. Civ. P. 56(h).

(4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Champagne,* 1998 ME 87, ¶ 15, 711 A.2d at 847 (quoting *Loe v. Town of Thomaston,* 600 A.2d 1090, 1093 (Me.1991)).[9]

[¶ 11] Gagne does not dispute that Curtis suffered severe emotional distress as a result of the incident and that no reasonable person could be expected to endure such distress. Rather, she argues, and the court agreed, that Curtis has failed to establish a prima facie case regarding the first three elements of IIED. Primarily, she contends that her limited role, if any, in the assault and robbery could not have caused Curtis's emotional distress, that her conduct was not outrageous, and that it does not rise to the level of intentional or reckless behavior.

[¶ 12] In the context of a tort claim, a person acts "intentionally" if he subjectively wants or subjectively foresees that harm to another will almost certainly result from his actions. *Maine Mut. Fire Ins. Co. v. Gervais,* 1998 ME 197, ¶ 11, 715 A.2d 938, 941. We agree with the Superior Court that Curtis has presented no evidence from which a jury could find, even upon reasonable inferences, that Gagne subjectively wanted or foresaw the assault on Curtis. Indeed, the record reflects that even Fifield was surprised by Porter's vicious attack on Curtis.

[¶ 13] The same is not true, however, for the recklessness component of the claim. A person acts recklessly if she knows or should know that her conduct creates an unreasonable risk of harm to another person and the unreasonableness of her actions exceeds negligence.[10] RESTATEMENT (SECOND) OF TORTS § 500 (1965). Although the Superior Court correctly concluded that Gagne had no separate duty to take action to protect Porter from harm created by others,[11] Gagne may be responsible for her own affirmative conduct in planning and supporting the robbery. A person involved in planning a nighttime theft from a delivery person knows or should know that the theft may result in serious emotional harm to that delivery person.

[¶ 14] The issue then becomes whether Curtis has generated a material fact in support of her claim that Gagne took part in *planning* the robbery. The Superior Court concluded that a fact-finder would have to engage in pure speculation to determine whether Gagne was actually involved in the planning. Curtis concedes the paucity of facts *directly* demonstrating Gagne's involvement, but argues that the facts would support a reasonable inference that Gagne knowingly participated in the plan for the robbery, thereby intentionally or recklessly causing

---

9. We first recognized in 1979 that a defendant may be liable for intentionally or recklessly inflicting emotional distress on a plaintiff. *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979).

10. The Restatement defines "reckless" in the following manner:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable [person] to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

RESTATEMENT (SECOND) OF TORTS § 500 (1965).

11. *See, e.g., Bryan R. v. Watchtower Bible and Tract Soc'y of NY, Inc.,* 1999 ME 144, ¶¶ 12, 14, 738 A.2d 839, 844–45; *Michaud v. Great N. Nekoosa Corp.,* 1998 ME 213, ¶ 19, 715 A.2d 955, 959–60; *Hughes v. Beta Upsilon Bldg. Ass'n,* 619 A.2d 525, 527 (Me.1993).

**24**

emotional harm to Curtis. The facts offered by Curtis on this issue include the following: Gagne knew that Porter and Fifield were planning to obtain a pizza and said she wanted bacon on the pizza, Gagne was aware that Porter had no money, Gagne knew that Porter and Fifield were planning to obtain the pizza by illegal means, the phone call that lured Curtis to the vacant residence was made from Gagne's residence at a time when she was present in the house, the vacant house to which the men lured Curtis belonged to Gagne or her grandmother, Gagne urged them not to get caught, and Gagne later lied to the police about her knowledge of the assault and robbery.

[¶ 15] We conclude that the facts presented are sufficient to allow a jury to infer that Gagne was an active participant in the robbery.[12] Although a jury could decide otherwise after hearing all of the facts, it is also possible for the fact-finder to infer that Gagne provided the means to set up the robbery by allowing the men to use her phone, and that she provided a place for the robbery to occur by providing the use of her grandmother's vacant residence as the delivery address.[13] From these inferences, a jury could conclude that Gagne actively participated in planning and setting up the robbery, that she knew or should have known that her conduct could cause severe emotional distress to the delivery person, and that Curtis suffered emotional harm as a result of Gagne's actions. In addition, we cannot say as a matter of law that participation in planning a nighttime robbery is not ex-

treme and outrageous conduct that would be regarded as atrocious and utterly intolerable.

[¶ 16] Thus, on the facts presented, Curtis has made out a prima facie case for each element of her claim:

(1) by planning and setting up the theft, Gagne recklessly inflicted severe emotional distress;

(2) the conduct of setting up a nighttime robbery of a delivery person is so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community";

(3) Gagne's actions in setting up the theft were a cause of Curtis's emotional distress; and

(4) the emotional distress suffered by Curtis was so severe that no reasonable person could be expected to endure it.

*See Champagne*, 1998 ME 87, ¶ 15, 711 A.2d at 847. Even though a fact-finder could conclude that these inferences and conclusions are not borne out when the evidence is presented at trial, the material facts are sufficient that summary judgment may not be granted on Curtis's claim for intentional infliction of emotional distress.

## IV. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ [¶ 17] Contrary to Curtis's argument, however, the conclusion that Gagne may have engaged in the intentional infliction of emotional distress does not lead to

---

**12.** It is on this narrow point that we part company with the Superior Court. The court concluded that "Gagne might have had reason to suspect her boyfriend might steal a pizza from a delivery person, but *did not assist in this endeavor nor play any role in carrying it out . . . .*" (Emphasis added.) We have determined from the facts before us that

a fact-finder would not be engaging in pure speculation in order to conclude to the contrary.

**13.** *Cf. State v. Flint H.*, 544 A.2d 739, 742 (Me.1988) (actively furnishing advice and encouragement to commit a crime sufficient to generate accomplice liability in criminal law).

the conclusion that a claim for negligent infliction must also lie. The titles of the two emotional distress torts can be misleading. They are not distinguished merely by the level of intentionality extant in the conduct at issue. Although any person may be liable for the infliction of severe emotional distress if the conduct causing the harm is sufficiently outrageous and is intentional or reckless, the universe of those who may be liable in tort for the *negligent* infliction of emotional distress is much more limited.[14]

[¶ 18] Part of the confusion regarding claims of negligent infliction arises from the fact that the elements of a claim of negligent infliction of emotional distress are similar to most negligence torts: a plaintiff must set forth facts from which it could be concluded that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. *Devine v. Roche*

*Biomed. Labs., Inc.*, 637 A.2d 441, 447 (Me.1994). Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability.[15] Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others. *See Bryan R.*, 1999 ME 144, ¶ 30, 738 A.2d at 848; *Devine*, 637 A.2d at 447; *see also Michaud v. Great N. Nekoosa Corp.*, 1998 ME 213, ¶ 20, 715 A.2d 955, 960 (declining to expand NIED recovery to rescuers).

[¶ 19] Nevertheless, we have recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions;[16] and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed.[17]

---

14. Many jurisdictions, as a general rule, decline to recognize a claim for negligent infliction of emotional distress absent a separate tort or evidence of actual physical injury resulting from the distress. *See, e.g., Doe v. Southeastern Univ.*, 732 F.Supp. 7, 10 (D.D.C. 1990); *Gracey v. Eaker*, 747 So.2d 475, 477 (Fla.Dist.Ct.App.1999); *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 775 P.2d 640, 646 (1989); *Reynolds v. Highland Manor, Inc.*, 24 Kan.App.2d 859, 954 P.2d 11, 13 (1998); *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 174–76 (1982); *Mauro v. Owens–Corning Fiberglas Corp.*, 225 N.J.Super. 196, 542 A.2d 16, 23 (App.Div.1988), *aff'd, Mauro v. Raymark Indus., Inc.*, 116 N.J. 126, 561 A.2d 257 (1989); *Temple–Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex.1999). The RESTATEMENT OF TORTS does not recognize a claim for the infliction of unintended emotional distress absent "bodily harm or other compensable damage." RESTATEMENT (SECOND) OF TORTS § 436A (1965).

15. The determination of duty is a matter of law to be decided by the court. *Bryan R.*, 1999 ME 144, ¶ 11, 738 A.2d at 844. Al-

though our earlier cases discussed the claim in terms of foreseeability of psychic harm, *see Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282, 1285 (Me.1987), we have since expressly declined to apply a pure foreseeability analysis to determine whether a duty to avoid negligently causing emotional harm exists. *Bryan R.*, 1999 ME 144, ¶ 31, 738 A.2d at 848; *Cameron v. Pepin*, 610 A.2d 279, 282 (Me.1992).

16. *See Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433, 438 (Me.1982) (allowing recovery where parent observed child choking); *Purty v. Kennebec Valley Med. Ctr.*, 551 A.2d 858, 860 (Me.1988) (allowing the claim to proceed where mother alleged that she observed defendant's negligence regarding her infant son); *cf. Cameron*, 610 A.2d at 284 (holding that no bystander liability will lie where the parent did not observe the defendant's negligence).

17. *See Rowe v. Bennett*, 514 A.2d 802, 807 (Me.1986) (allowing patient to proceed against her therapist for sexual involvement

We have also held that a claim for negligent infliction of emotional distress may lie when the wrongdoer has committed another tort. However, as we have recently held, when the separate tort at issue allows a plaintiff to recover for emotional suffering, the claim for negligent infliction of emotional distress is usually subsumed in any award entered on the separate tort. *Rippett v. Bemis*, 672 A.2d 82, 87–88 (Me. 1996). We have long allowed recovery for "mental anguish and loss of enjoyment of life" in most tort actions. *See, e.g., Kopenga v. Davric Me. Corp.*, 1999 ME 65, ¶ 18, 727 A.2d 906, 910. Although the words may be different, the recovery is for the same harm—the harm to the emotional health of the plaintiff. On the other hand, when there can be no recovery for emotional harm caused by the separate tort, as is the case in a few limited instances, such as negligent misrepresentation claims, a plaintiff may not circumvent that restriction by alleging negligent infliction in addition to the separate tort. *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 130 (1st Cir.2000).

[¶ 20] Moreover, a negligent infliction claim requires proof of severe emotional distress, an element of damages that is not ordinarily required when the separate tort (except intentional infliction of emotional distress) provides for recovery for emotional damages. Therefore, although negligent infliction claims are now *routinely* added to complaints stating a cause of action in tort, this practice is rarely necessary unless the claim is made by a bystander or against one with a special relationship to the plaintiff.

[¶ 21] Here, Curtis has not demonstrated the existence of a duty sufficient to make out a claim of negligent infliction of emotional distress. First, although Curtis originally asserted the existence of a special relationship between herself and Gagne, she no longer presses the claim that a special relationship exists between a customer and a pizza delivery person.[18] Second, Curtis makes no claim for liability based on her status as a bystander.

[¶ 22] And finally, the creation of the danger, that is, the separate tortious conduct, is set forth in her claim for intentional infliction of emotional distress. *See supra* note 11. Curtis may recover her emotional distress damages through that claim. She cannot, however, in the absence of a special relationship or a claim of bystander liability, press her claim to recover for her emotional distress if she does not prevail on the separate intentional infliction claim. Thus, her negligent infliction claim is subsumed in the intentional infliction claim, and the court appropriately granted summary judgment on that claim.

## V. AGENCY

[¶ 23] Finally, Curtis asserts that, because Fifield and Porter were acting as Gagne's agents, Gagne is responsible for their actions. We agree with the Superior Court that Curtis has offered no evidence from which a fact-finder could conclude that a principal-agent relationship existed between Gagne and Porter.[19] Thus, Curtis

---

with the patient's companion); *cf. Bryan R.*, 1999 ME 144, ¶ 17, 738 A.2d at 845 (concluding that no special relationship existed between minister and child of church members).

18. At oral argument, Curtis conceded that no special relationship exists between herself and Gagne.

19. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958); *accord Perry v. H.O. Perry & Son Co.*, 1998 ME 131, ¶ 7, 711 A.2d 1303, 1305; *Page*

failed to present a claim of agency sufficient for trial.

The entry is:

Judgment vacated on Curtis's claim of intentional infliction of emotional distress. Judgment affirmed on her claim of negligent infliction of emotional distress, agency, and her request for punitive damages.

CLIFFORD, J., files a dissenting opinion with whom RUDMAN, J. joins.

CLIFFORD, J., with whom RUDMAN, J. joins, dissenting.

[¶ 24] Because, in my view, the Superior Court properly analyzed the facts in the statements of material facts and correctly entered summary judgment for Gagne on Curtis's claim of intentional infliction of emotional distress, I respectfully dissent.

[¶ 25] Although there is evidence from which a jury could infer that Gagne had some *knowledge* that Porter and Fifield were contemplating a theft of pizza, in my view there is nothing to point to Gagne's participation in any *planning* of the theft. Moreover, Curtis's emotional distress was caused not by the theft of the pizza, but by the assault that was committed by Alan Porter, an action that was not foreseen even by Ryan Fifield, who participated in the theft with Porter.

[¶ 26] In my view, Curtis has failed to present sufficient evidence from which, without engaging in speculation, a jury could rationally infer that Gagne was "substantially certain that [Curtis's severe emotional] distress would result from [Gagne's] conduct" or that Gagne's conduct was so "extreme or outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community," or that her actions "caused [Curtis] severe emo-

tional distress." *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847.

[¶ 27] I would affirm the Superior Court's judgment in full.

*v. Boone's Transp., Ltd.*, 1998 ME 105, ¶ 5, 710 A.2d 256, 257.