STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-02-2

JH - AN- 4/6~

Philip C. Tobin,
  Plaintiff


v.

Decision and Judgment


Liberty Management, Inc.,
  Defendant

DONALD
  LA

MAY 25 2004

Hearing in this action was held April 22, 2003. The plaintiff appeared pro se, and a representative and counsel for the defendant were present. Liberty Management, Inc. manages and operates Riverview Apartments, a residential facility in Ellsworth, where Philip Tobin has lived since 1998. In 2002, Liberty took initial steps to evict Tobin because Tobin kept a dog in his apartment. Liberty terminated the eviction process after a physician certified that the dog was medically indicated, and Tobin continues to live at Riverview. Nonetheless, Tobin has brought this action against Liberty, seeking recovery for negligent infliction of emotional distress, wrongful use of civil proceedings and unlawful detainer.[1]

Tobin executed a lease agreement in August 1998. *See* defendant's exhibit 1. The lease instrument recited that pets are allowed, subject to Riverview's policy on pets. *Id.*, ¶ 4. The lease further provided that "[i]f the tenant is allowed to have a pet and does in fact have one," the tenant must provide an additional $200 security deposit. *Id.*, ¶ 11(b). In fact, there exists a separate document ("attachment 7") sets out the rules and regulations governing the ownership of pets at Riverview. Under the lease instrument, Tobin was required to follow Riverview's rules regarding pets. *Id.*, ¶ 12(j)(2). Such

---

[1] Tobin had also alleged intentional infliction of emotional distress. Summary judgment was granted on that count to the defendant. To the extent that the operative complaint (the fourth amended complaint) may be seen to set out other causes of action, Tobin does not pursue them.

rules could be posted in common areas. *Id.* By Tobin's own testimony, no later than 2000, the House Rules that are included in defendant's exhibit 1 were posted and applied to Tobin and the other residents. Those rules required tenants to secure "prior Management approval" in order to keep a pet.

When Tobin started his tenancy at Riverview, he did not own a pet. He never signed attachment 7, and he never paid the $200 security deposit required to keep a pet in his apartment. At some point not long into his tenancy at Riverview, Tobin either told Denise Beaudoin (Liberty's Riverview site manager), or Beaudoin discovered (*see* defendant's exhibit 3), that he (Tobin) had a dog and kept the dog in his apartment. If the former, then in the relevant conversation, Tobin may have created the impression that he had not decided whether to keep the dog. If the latter, Tobin told Beaudoin that he was keeping the dog only temporarily. In either event, Liberty was not aware that Tobin intended to keep a dog permanently. Liberty's Riverview site managers, Beaudoin and Esther Curtis, saw the dog on the premises several times. However, neither they nor anyone else on behalf of Liberty ever gave Tobin permission or approval to kept the dog in his apartment. Additionally, the evidence shows that Tobin never paid a pet security deposit. (Tobin testified that due to some changes in his rent, he believed that some of his monthly payments were being applied to cover the pet deposit. The court does not adopt Tobin's assumption because of its speculative quality.)

For these reasons, as things stood, Tobin was not authorized to keep the dog in his apartment, even though he did so. In June 2001, Tobin was in the process of changing apartments within the Riverview facility. His relocation was interrupted by complications, which ultimately caused Liberty's regional manager, Rhonda Gordon, to learn that Tobin kept a dog in his apartment. In a letter dated July 17, 2001, Gordon advised Tobin that he would need to move the dog out of the Riverview facility by September 5, 2001, and that if he failed to do so, Liberty would initiate eviction proceedings. *See* plaintiff's exhibit 7. Tobin did not find another home for the dog in accordance with Gordon's letter, and on September 10, Liberty served a "Notice of Intent to Terminate" on Tobin. *See* plaintiff's exhibit 11. Then, on September 18, it served on Tobin a "Notice of Termination of Lease." *See* plaintiff's exhibit 12. In both notices, Liberty claimed that Tobin had kept a dog on the premises without prior management

2

approval.[2] On October 18, a physician issued a written request for a reasonable accommodation, certifying that the companionship of a dog would benefit Tobin. *See* defendant's exhibit 5. On that date, Liberty wrote Tobin, advising him that it was terminating the eviction process and that it would allow him to keep the dog in his apartment. *See* plaintiff's exhibit 24. This decision was confirmed in another letter dated October 30. *See* plaintiff's exhibit 26. From this succession of events, the court finds that Liberty decided not to seek Tobin's eviction because he provided Liberty with a written request, from an appropriate and competent source, legitimizing the reasons why it was reasonable for Tobin to be able to keep his dog. The court rejects Tobin's factual contention that this was a ruse and that Liberty actually buckled to pressure applied by an attorney who became involved in the matter on Tobin's behalf. The trial record simply does not support that claim. Further, defense counsel's use of the word "ostensible" in a summary judgment submission – even if it has the implication urged by Tobin -- does not undermine the weight of the evidence demonstrating that the real reason for Liberty's action was to enforce the provisions of Tobin's lease regarding pets.

Tobin alleges that by taking preliminary steps toward his eviction, Liberty committed the tort of wrongful use of civil proceedings. To prevail on such a claim, Tobin must prove (1) that Liberty initiated civil proceedings without probable cause; (2) that Liberty's primary purpose was something other than securing a proper adjudication of an eviction proceeding; and (3) that the proceeding was terminated favorably to Tobin. *Pepperell Trust Co. v. Mountain Heir Financial Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651, 656. *See also* RESTATEMENT (SECOND) OF TORTS § 674 (1977) (cited in *Pepperell Trust*). Tobin has failed to prove at least the first two elements of this tort.

First, a party is deemed to have probable cause of a claim if that party "reasonably believes in the existence of facts on which the claim is based, and. . .correctly or reasonably believes that under those facts the claim may be valid under the applicable law. . . ." RESTATEMENT, § 675. Here, Liberty had information that Tobin kept a dog in his Riverview apartment and that, under the terms of the lease, Tobin was not authorized

---

[2] The two notices cite provisions of the "House Rules" and the "Regulations for Pets." For the reasons noted above, the House Rules are binding on Tobin as part of the lease agreement. *See* defendant's exhibit 1, ¶ 12(j).

to do so. A violation of the pet rules, under the lease, is a basis for termination of the lease (i.e., eviction). *See* defendant's exhibit 1, § 12(j) (final sentence). Liberty reasonably concluded that Tobin's conduct was a material breach of the lease agreement and that it was entitled to terminate the leasehold through the eviction process, for which it properly laid the groundwork by serving Tobin with a notice to terminate.

Second, the evidence demonstrates that Liberty was motivated only to obtain a proper adjudication of an eviction action. In this context, the court places significance on the way Liberty gave Tobin a considerable opportunity to make other arrangements for his dog. Liberty gave Tobin the choice of making those arrangements or facing eviction. The provisions of section 12(j) did not require Liberty to do anything other than seek termination of the lease. However, by offering Tobin with the first of those two alternatives, it is clear that Liberty's primary goal was to prompt Tobin to remove the dog from the premises. After Tobin provided a physician's written certification that the dog was medically warranted, Liberty then had reliable confirmation that the justification for the dog went far beyond the joys of conventional pet ownership. Thus, Liberty's actions were motivated by a proper and legitimate objective. *See* RESTATEMENT, § 676. cmt. c.

Without the need to address the question of whether Liberty "initiated" a civil proceeding against Tobin by serving him with a notice of termination, the court concludes that Tobin has failed to prove his claim of wrongful use of civil proceedings, because the evidence does not support the other two elements of this cause of action.

Tobin also seeks recovery for negligent infliction of emotional distress. To prevail on this claim, Tobin must prove (1) that Liberty (a lessor) owed a duty to Tobin (a lessee) to avoid inflicting emotional harm on him; (2) that it engaged in negligent conduct; (3) that the negligent conduct was the legal cause of (4) serious emotional distress. *Curtis v. Porter*, 2001 ME 158, ¶¶18-20, 784 A.2d 18, 25-26. At the very least, Tobin has failed to prove that Liberty was negligent and that any psychic distress caused by Liberty's conduct would be too great for an ordinarily constituted person to adequately endure. It is therefore unnecessary for the court to decide whether Liberty owed a legal duty to Tobin, *see Cameron v. Peppin*, 610 A.2d 279. 282 (Me. 1992) (existence and scope of a duty is a question of law), that is, whether the parties are in a "special relationship." *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d at 25.

4

Liberty reasonably concluded that Tobin breached the lease in a material and actionable way. This belief was predicated on Tobin's own conduct. As is discussed above, Tobin did not have permission to maintain a dog on the Riverview premises. Even if the local Liberty representative had some limited awareness that Tobin was sometimes in the presence of a dog, Liberty did not act unreasonably by seeking to enforce the pet restrictions contained in the lease. The reasonableness of its response is revealed by the amount of time Liberty gave Tobin to come into compliance with the terms of the lease (that is, to find another place for the dog to live). Liberty began that process in June, and four months later Tobin provided Liberty with an expressly framed accommodation request issued by a physician. Once Liberty came to know, from a proper source, the importance that Tobin's dog had to him, Liberty promptly reacted to that information and immediately abandoned its intention to pursue Tobin's eviction. Tobin has not proven that Liberty's conduct departed from the standard of ordinary care.

Tobin's NIED claim is also flawed because the trial evidence fails to establish that Liberty's conduct was of such a quality that it would have created severe emotional distress in an ordinarily sensitive person. *See Theriault v. Swan*, 558 A.2d 369, 372 (Me. 1989). Severe emotional distress is psychic injury of such a magnitude "that a reasonable person, normally constituted, would be unable to adequately endure." ALEXANDER, MAINE JURY INSTRUCTION MANUAL § 7-70 (4th ed. 2003) (instruction approved in *Fuller v. Central Maine Power Co.*, 598 A.2d 457, 460 n. 2 (Me. 1991)). Tobin argues correctly that in Maine, a tortfeasor is responsible for damages to a vulnerable party even if those damages exceed what a person in good health would suffer. However, in a NIED claim, as a matter of liability (as opposed to the assessment of damages), the claimant must demonstrate that the conduct underlying the claim would result in serious psychic injury to an ordinarily constituted person. If the claimant establishes this element, as well as the remaining elements of a NIED claim, then all damages that are legally caused by the actionable conduct – even those damages that might be unique to the particular claimant – form the basis for an award of compensation.

As Tobin himself argued in summation at trial, a person without his medical conditions may well have been able to cope with Liberty's decision to enforce the lease agreement. The court agrees with this assessment. It is important to bear in mind the

5

nature of the decision that Liberty properly required of Tobin. Tobin faced the prospect of eviction only if he failed to abide by the terms of his lease by placing his dog elsewhere. Tobin testified that the principal source of the damages he claims here was the apprehension (manifested physiologically and emotionally) caused by an involuntary removal from Riverview and the difficulties of finding a new home. Tobin was exposed to that circumstance, however, only if he elected to keep his dog. Thus, the factual question presented here is whether Liberty's insistence that Tobin comply with the pet restrictions in the lease would cause an ordinarily constituted person to suffer serious psychic distress. The court cannot answer this question in the affirmative, and Tobin has thereby failed to establish this element of a NIED claim.

Tobin acknowledged that a significant component of his damages claim is the series of medical conditions that he claims were caused by Liberty's conduct. These conditions include colitis, irritable bowel syndrome and a problem that resulted in neurosurgery. Even if Tobin had proven a tort claim that could encompass such damages as the basis for an award, the trial record does not provide a persuasive basis to conclude that these medical conditions were legally caused by the circumstances surrounding Tobin's tenancy. Even if the May 28, 2003, summary judgment order left open any claim for such damages, any connection between them and the underlying liability claim is entirely speculative. Thus, had Tobin proven that Liberty engaged in actionable conduct, any award of damages could not have been based on the effects of these medical conditions.

In his final cause of action, Tobin alleges that Liberty unlawfully detained his property. Presumably, although Tobin did not argue this claim at trial, this claim is based on 14 M.R.S.A. § 6014(1)(B) or (C). Here, however, there was no eviction of any kind – legal or illegal. Thus, Liberty does not face any liability under that statute, which provides remedies for damages flowing from an illegal eviction.

The entry shall be:

For the foregoing reasons, judgment is entered for the defendant. The defendant is awarded its costs of court.

6

Dated: April 23, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

APR 23 2004

SUPERIOR COURT
HANCOCK COUNTY

7