STATE OF MAINE
CUMBERLAND, SS



2008 FEB 27 A 8: 53

SUPERIOR COURT
Civil Action
Docket No. CV-06-145



ELIZABETH LYMAN,

     Plaintiff

v.

LUKE HUBER,

     Defendant

**DECISION AND ORDER
ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

## I. BEFORE THE COURT

This matter comes before the court on defendant Luke Huber's ("Huber") motion for partial summary judgment.

## II. BACKGROUND AND PROCEDURAL HISTORY

Huber was involved in a romantic relationship with the plaintiff, Elizabeth Lyman ("Lyman"), for approximately fifteen years, beginning in 1991. At the time their relationship began, Lyman was living in Portland and Huber was living in Saratoga Springs, New York. In 1994, Lyman became interested in purchasing property that was for sale in Cape Elizabeth so that she could start a business involving horses. At some point, the parties discussed buying the property together, and did so in November 1994. Huber paid the total purchase price at the time and Lyman made contributions later.[1] Lyman lived there full-time until she moved out in April of 2006. Huber did not live there full-time until some time in late 2002 or 2003.

---

[1] The parties were initially listed as joint tenants, but later executed a quitclaim deed that changed their ownership status to tenants in common. Lyman has filed claims against Huber for equitable partition, waste and/or trespass, and ouster, but they are not the subjects of Huber's motion.

During their relationship, Huber paid for most of the household expenses, and also contributed money for Lyman's horse business and her personal expenses. Lyman contends that she was responsible for virtually all of the household chores, including cooking, cleaning, food and household shopping, snow plowing, lawn mowing, and landscaping. Huber asserts that he performed some of the household labor.

For reasons that are discussed within, the relationship deteriorated. In August 2006, Lyman filed an eight-count complaint against Huber asserting claims for, *inter alia*, unjust enrichment (Count IV), quantum meruit (Count V), negligent infliction of emotional distress (Count VI), intentional infliction of emotional distress (Count VII), and punitive damages (Count VIII).[2] Huber answered the complaint and later filed the present motion for partial summary judgment.[3]

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A

---

[2] The eight counts of the complaint are:
    I. Equitable Partition
    II. Waste and/or Trespass as Between Co-Tenants
    III. Ouster
    IV. Unjust Enrichment
    V. Quantum Meruit
    VI. Negligent Infliction of Emotional Distress
    VII. Intentional Infliction of Emotional Distress, and
    VIII. Punitive Damages.

[3] The defendant's motion is directed only at Counts IV through VIII, inclusive.

material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## B. Unjust Enrichment

To prevail on a claim for unjust enrichment, a plaintiff must demonstrate that she provided a benefit to the defendant, that the defendant knew of or appreciated the benefit, and that it would be inequitable for the defendant to continue to retain the benefit without payment of value. *George C. Hall & Sons, Inc. v. Taylor*, 628 A.2d 1037, 1039 (Me. 1993). "Where one party will be unjustly enriched by the receipt of goods or services that are rendered by another with expectations of compensation, the law will imply a promise to pay on the part of the recipient." *Estate of White*, 521 A.2d 1180, 1182 (Me. 1987). The issue of whether the services provided were gratuitous is one of fact. *Id.* at 1183. The measure of recovery is "based on the extent to which the recipient has been enriched." *Id.* at 1184.

For example, a construction company sued a town for breach of contract and unjust enrichment when the town refused to pay the company for repairing a ballpark. *A.F.A.B, Inc. v. Town of Old Orchard Beach*, 610 A.2d 747, 749 (Me. 1992). The company had been solicited to make the renovations by another company that planned to buy the ballpark, but then did not purchase it. *Id.* at 748-749. When the construction company agreed to repair the park, it did so because the other company had promised it

compensation regardless of whether the sale actually occurred. *Id.* at 749. The Law Court held that summary judgment should not have been granted for the Town because, although the trial court properly found that the first two elements had been satisfied, it applied the incorrect legal standard regarding whether it was inequitable for the town to retain the benefit. *Id.* at 7.

In this case, applicability of unjust enrichment depends upon whether Lyman can show that she provided services to Huber with the expectation of compensation and that it would be inequitable if she were not paid for them. Lyman contends that she did virtually all of the cooking, cleaning, food and household shopping, snow plowing, lawn mowing, and landscaping, and that such services were requested by Huber. Huber disagrees with Lyman's assertions that she did all of the work on the property, claiming that he also provided some labor. Furthermore, he asserts that he paid most of the household expenses, and contributed money to Lyman's horse business and personal expenses. Lyman admitted in her deposition that Huber paid most of the household expenses, and stated in her affidavit that it was her understanding that because she did not have as much money to contribute financially, she would perform more of the household labor. She also admits that Huber paid some money toward the horse business.

Given these facts, Lyman cannot show that she expected to be compensated for the services that she provided, or that it would be inequitable for Huber to retain the benefit of them. The parties had an arrangement whereby Huber would provide the majority of the financial support to the household and Lyman would provide the majority of household labor. Moreover, the division of household labor as part of the typical romantic relationship should not provide a basis for a claim of unjust enrichment. Summary judgment is appropriate on this claim.

## C. Quantum Meruit.

Quantum meruit is a vehicle for recovery when an implied contract exists. *Runnells v. Quinn*, 2006 ME 7, ¶ 10, 890 A.2d 713, 716-717 (citations omitted). To prevail on a quantum meruit claim, a plaintiff must prove that he or she rendered services to the defendant with the defendant's "knowledge and consent," and that, under the circumstances, the plaintiff reasonably expects reimbursement. *Id.* ¶ 10, 890 A.2d at 717. The measure of recovery is the "reasonable value of the services used" by the defendant. *Estate of White*, 521 A.2d at 1184, n. 3.

For the same reasons as stated above, Lyman also cannot prevail on a claim for quantum meruit. She has not shown that it would be reasonable for her to expect compensation for the household labor that she provided during the course of her relationship with Huber while the defendant funded the household expenses and her business. Summary judgment is warranted on this claim.

## D. Negligent Infliction of Emotional Distress

In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. However, plaintiffs "face a significant hurdle in establishing the requisite duty," because a "general duty to avoid negligently causing emotional harm to others" does not exist. *Id.* The "limited circumstances" in which an individual has such a duty are either in "bystander liability actions" or when "a special relationship exists between the actor and the person emotionally harmed." *Id.* at ¶ 19, 784 A.2d at 25. Additionally, the harm suffered must amount to "serious mental distress," which is "found where a

reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Id.* at 437.

The Law Court has stated that it is "[o]nly where a particular duty based upon the unique relationship of the parties has been established may a defendant be held responsible, absent some other wrongdoing, for harming the emotional well-being of another." *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 31, 738 A.2d 839, 848 1999 (Me.1999). The special relationships that the Court has recognized as providing a basis for recovery are those in which there is typically some unique level of trust required. *See e.g. Rowe v. Bennett*, 514 A.2d 802 (Me. 1986) (holding that a psychotherapist had a duty to avoid emotional harm to a patient because of the nature of the relationship); *Bolton v. Caine*, 584 A.2d 615, 618 (Me. 1990) (holding that a doctor has a duty to avoid emotional harm caused by a failure to provide a patient "critical information relevant to a potentially life-threatening illness"); *Gammon v. Osteopathic Hosp. of Me.*, 534 A.2d 1282 (Me. 1987) (holding that it was reasonably foreseeable to a hospital and a mortician that families of the recently deceased would incur emotional harm upon the negligent handling of remains).

Huber argues that a "boyfriend/girlfriend relationship" is not a special relationship that would give rise to a duty to avoid causing emotional harm. In fact, he asserts, a romantic relationship is one in which emotional harm is a common occurrence. Lyman argues that it is not the romantic relationship between them, but their relationship as co-owners of a house, which provides the basis for such a duty. However, the Law Court has never held that co-owners of a house owe a duty to one another to avoid causing emotional harm, and there is nothing unique about this type of relationship that would warrant the existence of one. Because there is no special

6

relationship between the parties, summary judgment on claim for negligent infliction of emotional distress is appropriate.

**E. Intentional Infliction of Emotional Distress**

To prevail on an intentional infliction of emotional distress claim, a plaintiff must show that the defendant's behavior was "extreme and outrageous" to the point that it "exceed[s] all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community." *Latremore v. Latremore*, 584 A.2d 626, 630 (quoting *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me. 1979)(internal quotation marks omitted). For instance, in *Latremore*, the Law Court upheld a jury verdict awarding damages for emotional distress to a couple whose son had threatened to evict them from property that they originally had sold to him. *Id.* at 630. The Court was persuaded that the jury reasonably could have found the son's behavior was "extreme and outrageous" because he demanded excessively high rent from his parents and threatened to evict them "even though he knew that his parents were aged and . . . in poor health." *Id.*

Lyman contends that shortly after the purchase of the home, Huber began to create and enforce irrational rules and would respond with violent outbursts designed to control and intimidate her when she did not comply, although she admits that he was never physically violent toward her. She also asserts that she was forced to live in an unreasonable condition, because Huber accumulated piles of papers, boxes, newspapers, periodicals, crates, and trash that Lyman was forbidden to touch or move. She submits that as a result of Huber's actions toward her, she felt inadequate and withdrawn. She claims that visitors to the property witnessed Huber's behavior, and provides affidavits from friends, family, and business associates to support her allegations, including the effect of Huber's behavior on her. They describe Lyman as

7

"guarded, jumpy and withdrawn," "shaken," and "tense, afraid and on edge." Lyman believed that Huber's angry outbursts would lead to violence if she did not comply with his demands, and one friend witnessed her looking "exhausted and stressed with dark circles under her eyes." Finally, she asserts that Huber exploited her financial vulnerability.

Huber claims that the house was messy only toward the end of their relationship as a normal consequence of the "dislocation" that they were experiencing. He denies that any angry outbursts from Huber were directed at Lyman, and points to her deposition testimony where she states that the anger was mostly directed at himself. Furthermore, he argues that Lyman has failed to show that any distress she suffered was sufficiently severe. He asserts that Lyman has not alleged any specific emotional injury or symptom and has not sought treatment for emotional distress. While it is necessary to prove that the defendant's conduct caused severe emotional distress, such distress may at times be inferred from the defendant's conduct and "objective symptomatology is not an absolute prerequisite for recovery of damages for intentional, as opposed to negligent, infliction of emotional distress." *Latremore*, 584 A.2d at 633. Furthermore, the severity of emotional distress that a person suffers is a factual issue. *Id.* at 631.

Viewing the facts in the light most favorable to the Lyman, she has satisfied her burden to set forth a prima facie case for intentional infliction of emotional distress. Like the son's conduct in *Latremore*, Huber's behavior toward Lyman could be viewed as manifesting a pattern of cruelty and intimidation such that a reasonable jury might conclude that it is extreme and outrageous. Also, the affidavits of friends, family and business associates of Lyman establish that the impact of that conduct upon the plaintiff was severe. Because it is for the fact finder to determine whether Huber's behavior in

fact was extreme and outrageous, and whether Lyman in fact suffered severe emotional distress, summary judgment on this issue is inappropriate, as Lyman has made a *prima facie* demonstration that there are facts supporting each element of an IIED claim.

## F. Punitive Damages

A plaintiff is entitled to punitive damages only if there is underlying "tortious conduct" and "the tortfeasor acted with malice." *Waxler v. Waxler*, 1997 ME 190,¶ 15, 699 A.2d 1161, 1165. Malice may be found where "the plaintiff can establish by clear and convincing evidence that the defendant's conduct was motivated by actual ill will or was so outrageous that malice is implied." *Id.* (quoting *Fine Line, Inc. v. Blake*, 677 A.2d 1061, 1065 (Me. 1996)).

Huber first argues that the defendant's conduct must be tortious to support an award of punitive damages and Lyman is unable to show such conduct. Additionally, he contends that the claims presented by Lyman do not show either actual or implied malice. Lyman asserts that Huber's conduct was intended to control and intimidate her. If a jury concludes that Huber's actions amounted to intentional infliction of emotional distress, it may also be possible for them to find that Huber acted with malice, actual or implied, for the same reasons as outlined above. Lyman has generated a genuine issue of material fact as to malice, and summary judgment is not appropriate.

## IV. DECISION AND JUDGMENT

The clerk will make the following entries as the Decision and Judgment of the court:

A. Defendant's Motion for Partial Summary Judgment is granted as to Count IV, unjust enrichment;

B. Defendant's Motion for Partial Summary Judgment is granted as to Count V, quantum meruit;

9

C. Defendant's Motion for Partial Summary Judgment is granted as to Count VI, negligent infliction of emotional distress;

D. Defendant's Motion for Partial Summary Judgment is denied as to Count VII, intentional infliction of emotional distress; and,

E. Defendant's Motion for Partial Summary Judgment is denied as to Count VIII, punitive damages.

SO ORDERED.

Dated: February 26, 2008

Thomas E. Delahanty II
Justice, Superior Court

)F COURTS
and County
Box 287
ine 04112-0287

PAULA HOUSE MCFAUL ESQ
26 SAWYER ST
SCARBOROUGH ME 04074

)F COURTS
and County
Box 287
ine 04112-0287

TIMOTHY NORTON ESQ
KELLY REMMEL & ZIMMERMAN
PO BOX 597
PORTLAND ME 04112-0597