STATE OF MAINE
OXFORD, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-49

KIM BOIVIN

        Plaintiff

    v.

SOMATEX, INC.

        Defendant

ORDER

This matter comes before the court on Defendant, Somatex Inc.'s, Motion for Summary Judgment. The facts of this tragic case present a challenging application of the limits on a defendant's duty of care to protect psychic injury to another party. Because the court cannot find any authority that imposes a duty of care given these facts, Defendant's Motion is granted.

**I. Factual Background**

Somatex is a Maine corporation that repairs overhead cranes. Plaintiff, Kim Boivin, is a crane operator employed by NewPage Paper Company in Rumford, Maine. NewPage hired Somatex in August, 2014 to repair one of its overhead cranes at NewPage's Rumford Mill. On August 25, 2014, two Somatex employees, Brant Munster and Zack Croft, arrived at the Rumford Mill to perform the necessary crane repair work. The Plaintiff was instructed by NewPage to work alongside Munster and Croft while they worked on the crane.

Munster and Croft informed the Plaintiff that they felt it necessary for Munster to ride the crane while it was in operation in order to diagnose why the crane was not functioning properly. Plaintiff alleges that she refused to operate the crane while Munster was riding it. Plaintiff further

1

alleges that Munster and Croft informed the Plaintiff that this was as standard practice for Somatex and assured the Plaintiff that Munster would remain seated and stationary while the crane was in operation. (PSAMF ¶ 21.)[1] The Plaintiff agreed to operate the crane as Munster requested.

Munster climbed the crane and Croft remained on the ground. Plaintiff operated the crane under Croft's direction. However, as Plaintiff was moving the crane, Munster stood up unexpectedly and became crushed underneath an overhead beam. Munster was knocked out of the crane and fell approximately thirty feet to the ground, landing in front of the Plaintiff. Munster did not come into physical contact with the Plaintiff when he fell. Munster died as a result of his injuries. The Plaintiff alleges that she has suffered post-traumatic stress disorder ("PTSD") and other emotional damages as a result of witnessing the incident.

It is undisputed that, at all times relevant to this case, Munster and Croft were acting within the scope of their employment with Somatex Inc. Plaintiff brought the present lawsuit against Somatex only, alleging that Somatex is vicariously liable for the injuries caused to the Plaintiffs as a result of Munster and Croft's alleged negligence. The Defendants have moved for Summary Judgment on the grounds that the Defendant cannot be held liable for the negligence alleged as a matter of law.

## II. Summary Judgment Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as

---

[1] Defendant objects to this statement of fact on the grounds that it fails to comply with the rules for opposing statements of fact. (Def's. Opp. to POSMF pg. 5.) M.R. Civ. P. 56 requires that opposing statements of fact be "short[] and concise." Plaintiff's opposing statements of fact do indeed appear to violate Rule 56 standards in that they contain multiple factual assertions within each statement of fact. However, the Defendant, without waiving objection, otherwise admits to the factual assertions in ¶ 21. Accordingly, the court determines that, based on the record in support of Summary Judgment, it is generally undisputed that the Plaintiff at least was under the impression that Munster would remain stationary while the Plaintiff moved the crane. (DSMF ¶¶ 12; POSMF ¶ 21; Croft Dep. pg 79, lines 10-13.) All other factual assertions are deemed to be a genuine issue of fact.

2

to any material fact in dispute. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M. R. Civ. P. 56(h)(4). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quotations omitted). To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *See Savell v. Duddy*, 2016 ME 139, ¶ 18, 147 A.3d 1179. The court reviews the evidence in the light most favorable to the non-moving party. *Id.*

**III. Discussion**

Generally, claims of negligence require a plaintiff to prove that the defendant breached a duty of care owed to the plaintiff and that the defendant's breach of the requisite duty of care caused the plaintiff to suffer damages. *See Bell ex re. Bell v. Dawson*, 2013 ME 108, ¶ 17, 82 A.3d 827. The Defendant here argues that it is entitled to summary judgment because it did not owe a duty of care to the Plaintiff as a matter of law. Specifically, the Defendant argues that Plaintiff's claim for negligence is actually a claim for negligent infliction of emotional distress ("NIED"), which limits the circumstances under which the Defendant can be found to owe a duty of care to the Plaintiff. The Plaintiff argues in response that this is a straightforward negligence case and that it would be inappropriate to apply the duty of care standards applicable to NIED claims. Accordingly, the court must first determine whether this case presents a straightforward negligence claim, or a claim for NIED.

**A. Negligent Infliction of Emotional Distress**

"Liability in negligence . . . ordinarily requires proof of personal injury or property damage." *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 2010 ME 93, ¶ 9, 4 A.3d 492. However, "the victim of negligent conduct [also] has a legally protected interest in her psychic health[.]" *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 6, 711 A.2d 842. A claim to recover damages suffered purely as a result of an alleged psychic injury is brought specifically as a claim for NIED. *See Bryan R. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 30, 738 A.2d 839. "However, . . . [if a] separate tort . . . allows a plaintiff to recover for emotional suffering, the claim for [NIED] is usually subsumed in any award entered on the separate tort." *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18.

The Law Court has also held that, in contrast to the general duty of "each person . . . to act reasonably to avoid [negligently] causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others." *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 18. Accordingly, although a plaintiff has a legally protected interest in his or her psychic health, the instances in which a person has a duty to avoid negligently causing harm to psychic health arises only in "limited circumstances." *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d 18.

Based on the forgoing, whether a claim is one of negligence or NIED is a question of whether the Plaintiff has alleged a physical versus emotional injury. The parties did not provide and the court is not aware of, case law that further defines "physical injury." Accordingly, the Plaintiff's claim for relief can be treated as a straightforward negligence claim on summary judgment if the Plaintiff makes a prima facie showing that she suffered physical injury. If the Plaintiff makes this necessary showing, the Plaintiff's emotional damages would be subsumed into any damages she might be entitled to recover on a straightforward negligence claim and she would avoid the heightened duty of care standards on NIED claims.

The Plaintiff's argument that she suffered physical injury is based on the bare assertion that PTSD is a "physical disorder." Plaintiff's claim that PTSD is a physical disorder is grounded entirely on an affidavit from Plaintiff's psychiatry expert, Dr. Jeffrey Barkin. Dr. Barkin's affidavit states only that, "It is . . . [his] opinion that PTSD is both a physical and mental disorder and that is the consensus of current medical and scientific research." (Barkin Aff. ¶ 10.) There is no other evidence in the record to support the conclusion that PTSD is a physical injury.

The Plaintiff has failed to make a *u* showing that she suffered a physical injury as result of the negligent acts alleged. The only event giving rise to Plaintiff's PTSD was her witnessing Munster's fall. There is nothing in the record to suggest that she suffered actual physical injury or came into physical contact with any foreign objects as a result of that fall. Moreover, Dr. Barkin's affidavit asserts only a bare conclusion that PTSD is a "physical disorder" and does not explain whether the term "physical disorder" is indeed interchangeable with the concept of physical injury. PTSD may be considered a physical disorder by the medical community but the physical disorder label alone does not give rise to the conclusion that PTSD is a physical *injury*. Without evidence that further explains the physical nature of PTSD, the court cannot hold that PTSD constitutes a physical injury, particularly when that PTSD was caused by the Plaintiff witnessing a traumatic event. At least one other jurisdiction has held that PTSD is not a physical injury. *See Aguilar v. United States*, 2017 U.S. Dist. LEXIS 206278 (S.D. Tex. 2017)("PTSD falls within a definition of mental anguish, not physical injury."). Accordingly, the Plaintiff has failed to make a prima facie showing that she suffered a physical injury as a result of any alleged negligence and thus her claim for relief must be resolved according standards applicable to NIED causes of action.

**B. NIED Duty of Care**

The elements of NIED are the same as general negligence torts: "(1) the defendant owed a

5

duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 18. Unlike pure negligence claims however, "[p]laintiffs claiming negligent infliction . . . face a significant hurdle in establishing the requisite duty[.]" *Id.* The circumstances under which a duty to avoid emotional injury arises are different according to whether the plaintiff is a direct or indirect victim of the defendant's negligent act. *See Champagne*, 1998 ME 87, ¶ 6, 711 A.2d 842. Here, the Plaintiff alleges that she was a direct victim of the Defendant's negligence.

"A plaintiff is a direct victim if she was the object of the defendant's negligent conduct." *Champagne*, 1998 ME 87, ¶ 6, 711 A.2d 842. "The 'direct victim' claiming [NIED] may recover when the defendant's negligence was directed at the victim; namely, that the defendant owed the victim *an independent duty of care* and that the defendant should have foreseen that mental distress would result from his negligence." *Michaud*, 1998 ME 213, ¶ 16, 715 A.2d 955 (emphasis supplied).

In *Michaud*, two divers were sent by the defendant corporation to perform an underwater dam repair. *Michaud*, 1998 ME 213 ¶ 2, 715 A.2d 955. The defendant appears to have been negligent in preparing the divers for the repair job and both divers became stuck underwater as a result. *Michaud*, 1998 ME 213 ¶¶ 6, 8, 715 A.2d 955. The plaintiff was also a diver but was not involved with the dam repair project. *Michaud*, 1998 ME 213 ¶ 9, 715 A.2d 955. The plaintiff traveled to the repair site after learning that a rescue operation to recover the original divers was underway. *Id.* It is disputed whether the Plaintiff was requested to dive and attempt a rescue, or whether he dove voluntarily. *Michaud*, 1998 ME 213 ¶ 11, 715 A.2d 955. Regardless, the plaintiff dove to attempt a rescue and witnessed one of the trapped divers have his leg torn off during the rescue attempt. He filed a NIED claim against the defendant corporation. *Michaud*, 1998 ME 213

¶ 13, 715 A.2d 955. The Law Court found that under the circumstances, "defendants' alleged negligence was directed at the two divers trapped in the [dam's] gate." *Id.* Because of this, the plaintiff could not be held to be the object of the alleged negligent conduct but was instead a "bystander" or indirect victim of the defendant's negligent conduct. *Id.*

In some aspects this case is factually distinguishable from *Michaud.* There were direct interactions between the Sominex employees and the Plaintiff. They provided her with some instruction and assurances regarding the operation. Although she had misgivings, her employer asked her to proceed. She was involved in the operation that resulted in Munster's death. Naturally, that would increase the horror and subsequent emotional injury. The court gave serious consideration to whether these differences were enough to establish a duty of care in this case when there was no such duty in *Michaud.*

Ultimately, the facts here are sufficiently similar that *Michaud* governs the result here. First, the alleged negligent act, Munster's decision to stand up while the crane was moving, was directed toward Munster, not the Plaintiff. The danger of physical injury was to Munster, not the Plaintiff. In *Michaud,* the negligence was directed at the two divers who first became stuck in the dam, not the Plaintiff who observed the consequences. Second, even though the interactions between the Plaintiff and the Defendant's employees in this case were more involved than in *Michaud,* the *Michaud* defendant requested that the plaintiff perform the dive. The court in *Michaud* found no duty of care even though the plaintiff's emotional distress was foreseeable. The court is not aware of any authority that would allow it to find that the working relationship between the Plaintiff and the Defendant creates a duty to exercise reasonable care to protect the Plaintiff from emotional injury. The court cannot find an "independent duty of care."

## IV. Conclusion

The entry is:

Defendant's Motion for Summary Judgment is GRANTED.

The Clerk is hereby directed to incorporate this Order by reference in the docket pursuant to M. R. Civ. P. 79(a).

Date: August **6** , 2021

Thomas McKeon
Justice, Superior Court

8