STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. CV-16-427

REC'D CUMB CLERKS OFC
JUN 14 '19 PM1:07

INFOBRIDGE LLC,

        Plaintiff

            v.                                    ORDER ON PLAINTIFF'S
                                                  PARTIAL MOTION FOR
CHIMANI, INC. f/k/a                               SUMMARY JUDGMENT
CHIMANI LLC,

        Defendant


        Before the court are plaintiff InfoBridge, LLC's partial motion for summary judgment on

count I of its complaint, breach of contract, and defendant Chimani, Inc.'s cross motion for

summary judgment. For the following reasons, plaintiff's partial motion for summary judgment

is granted in part and denied in part; defendant's cross motion for summary judgment on the

estoppel issue is moot; defendant's motion for summary judgment on the contract interpretation

issue is denied.

## I.    FACTS

        Defendant Chimani, Inc. f/k/a Chimani, LLC entered into a Software Development

Agreement with plaintiff InfoBridge, LLC on February 11, 2010. (Pl.'s S.M.F. ¶ 1.) Defendant's

president, Kerry Gallivan, executed the contract on behalf of defendant. (Pl.'s S.M.F. ¶ 2.) Shaun

Meredith has been the sole member and sole owner of InfoBridge since its establishment. (Def.'s

A.S.M.F. ¶ 24.) Under the Software Development Agreement, plaintiff was required to develop

and launch applications for national parks for defendant and defendant was required to pay plaintiff

1

certain fees. (Pl.'s S.M.F. ¶¶ 3-5, 7-8.)¹ In May 2010, plaintiff submitted the Acadia Chimani mobile application it had designed to the Apple Application Store. (Def.'s Opp. S.M.F. ¶ 11.) On May 25, 2010, Kerry Gallivan on behalf of defendant executed a certificate of acceptance in accordance with the Software Development Agreement. (Pl.'s S.M.F. ¶¶ 13-14.)

Defendant paid plaintiff the following fees: (1) $5,914.00 on February 11, 2010 pursuant to the Software Development Agreement § 2(a)(i) "Five Thousand Nine Hundred Fourteen Dollars ($5,914.00) upon the Effective Date;" (Pl.'s S.M.F. ¶ 15); (2) $5,914.00 pursuant to the Software Development Agreement § 2(a)(ii) "Five Thousand Nine Hundred Fourteen Dollars ($5,914.00) upon completion of a working prototype of the Program accepted by [Chimani];" (Pl.'s S.M.F. ¶ 16); (3) $7,886.00 pursuant to Software Development Agreement § 2(a)(iii) "Seven Thousand Eight Hundred Eighty Six Dollars ($7,886.00) upon submittal of the application to the Apple Application Store;" (Pl.'s S.M.F. ¶ 17); and (4) two royalty payments of $384.57 and $539.66 pursuant to the Software Development Agreement § 2(a)(iv), (Pl.'s S.M.F. ¶¶ 18-20.)

The parties dispute whether further payments are required pursuant to the royalty payments provision of the Software Development Agreement § 2(a)(iv), and if they are required, what the amount of those payments should be. (See Pl.'s S.M.F. ¶ 8); (Def.'s Opp. S.M.F. ¶ 8); (Def.'s A.S.M.F. ¶¶ 52, 53, 63.)

Section 2(a)(iv) of the contract states:

> Fourteen and one-half percent (14.5%) of the Net Revenue from each sale and download of the Program up to a total amount of $150,000 in the aggregate from all revenue sources derived from the Program including, but not limited to: sales, downloads, advertising fees, and volume purchasing agreements. "Net Revenue" shall mean the fees actually paid to and received by [Chimani] from downloads of the Program by end-users to their iPhones net of (i)

---

¹ Parties dispute the exact amount of the fees owed to plaintiff. (Pl.'s S.M.F. ¶ 8); (Def.'s Opp. S.M.F. ¶ 8.)

2

any refunds or returns, (ii) taxes paid by [Chimani] in connection with such download and (iii) any royalty amounts payable to the Application Store Provider (such as Apple Inc. in connection with the Apple Application Store) by [Chimani] in connection with such download (InfoBridge acknowledges that as of the Effective Date [Chimani] pays Apple Inc. a 30% commission on each such download) as well as any fees paid by [Chimani] to a third party in connection with the fees of [Chimani] derived from the Program. [Chimani] agrees that it will require any purchaser of [Chimani]'s business to agree to comply with [Chimani]'s obligations specified in this Section 2(a)(iv).

(Def.'s A.S.M.F. ¶ 39.) Plaintiff claims that as of September 22, 2017, defendant has generated at least $1.2 million in revenue. (Pl.'s S.M.F. ¶ 22.) Defendant claims that as defined by the Software Development Agreement, its net revenue is only $43,841.07. (Def.'s A.S.M.F. ¶ 63.)

In March of 2013, plaintiff's owner and founder, Mr. Meredith, joined defendant corporation. (Def.'s A.S.M.F. ¶ 41.) On March 31, 2015, defendant converted from an LLC to a Delaware corporation as part of a Series A Stock Financing transaction. (Def.'s A.S.M.F. ¶ 42.) Mr. Meredith was a co-founder of defendant corporation and acted as its Key Holder and Director. (Def.'s A.S.M.F. ¶ 45.) As part of the Series A Stock Financing transaction, defendant executed a Disclosure Schedule. (Def.'s A.S.M.F. ¶ 46.) Parties' dispute whether the Disclosure Schedule document is relevant to whether plaintiff may seek payment from defendant because of Mr. Meredith's involvement in the founding of defendant corporation and information not included in the Disclosure Schedule. (See Def.'s A.S.M.F. ¶¶ 46-53); (See Pl.'s Opp. A.S.M.F. ¶¶ 46-53.)

## II. PROCEDURE

On November 4, 2016, plaintiff filed a complaint and alleged three causes of action: count I, breach of contract; count II, quantum meruit; and count III, unjust enrichment. On July 13, 2017, defendant filed an answer to the complaint. Defendant also filed a counterclaim and third-party complaint against Mr. Meredith and alleged four causes of action: count I, breach of contract

3

against plaintiff; count II, negligence against plaintiff and Mr. Meredith; count III, breach of fiduciary duty against plaintiff and Mr. Meredith; and count IV, constructive trust against Mr. Meredith. On January 5, 2018, defendant filed an amended counterclaim and third-party complaint which changed count II of its original counterclaim and third-party complaint from negligence to professional negligence and added a count of negligent misrepresentation against both plaintiff and Mr. Meredith. On May 21, 2018, plaintiff filed a second amended counterclaim and third-party complaint against Mr. Meredith; no causes of action were added.

On February 28, 2019, plaintiff filed a motion for partial summary judgment on count I of its complaint. On March 21, 2019, defendant filed an opposition to plaintiff's motion for partial summary judgment and filed a cross motion for summary judgment. On April 8, 2019, plaintiff filed an opposition to defendant's cross motion for summary judgment and replied to defendant's opposition to plaintiff's motion for partial summary judgment. On April 11, 2019, defendant moved to amend its answer and add affirmative defenses of estoppel and waiver. On April 22, 2019, defendant filed a reply to plaintiff's opposition to defendant's cross motion for summary judgment. On May 1, 2019, plaintiff filed an opposition to defendant's motion to amend. On June 6, 2019, the court denied defendant's motion to amend its answer.

On May 23, 2019, parties moved for a consented to motion to dismiss defendant's counterclaims and third-party complaint against Shaun Meredith. On May 30, 2019, the court granted the parties' consented to motion to dismiss defendant's counterclaim and third-party complaint against Shaun Meredith.

## III. DISCUSSION

### A. DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on the issue of the interpretation of the contract. Defendant also argues plaintiff is estopped from asserting its claims. (Def.'s Mot. Summ. J. 1, 8-12.) On June 6, 2019, the court denied defendant's motion to amend its answer to add affirmative defenses, including estoppel. Defendant's equitable estoppel and waiver defenses are waived. See M.R. Civ. P. 8(c) ("[A] party shall set forth affirmatively . . . estoppel, . . . waiver."); R.C. Moore, Inc. v. Les-Care Kitchens, Inc., 2007 ME 138, ¶ 24, 931 A.2d 1081 ("[A] failure to plead an affirmative defense results in the waiver of that defense." (quotation marks omitted)).

Further, in its motion to dismiss its second amended counterclaim and third-party complaint against Mr. Meredith, defendant stated, "the sole basis for its defense of breach of contract to InfoBridge's complaint against Chimani is Apple Inc.'s rejection of the Chimani, Inc. apps." (Def.'s Mot. Dismiss 1.) Defendant's estoppel argument is moot.

### B. STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." Lougee Conservancy v. CityMortgage, Inc., 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation marks omitted).

On summary judgment, the court considers reasonable inferences that may be drawn from the facts. Curtis v. Porter, 2001 ME 158, ¶ 9, 784 A.2d 18. Additionally, the nonmoving party benefits from all "favorable inferences that may be drawn from the facts presented." Id. (quotation

marks omitted). "When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered." Id.

## C. BREACH OF CONTRACT

Plaintiff moves for partial summary judgment on its breach of contract claim and argues that (1) there is no dispute that defendant and plaintiff entered into a contract; (2) plaintiff performed its obligations under the contract; (3) defendant executed a certificate of acceptance after plaintiff delivered the program; and (4) defendant breached the contract by failing to make required royalty payments to plaintiff. (Pl.'s Mot. Summ. J. 4-5.) Defendant argues that: (1) Apple Inc.'s subsequent rejection of the application designed by plaintiff bars recovery; (2) a factual dispute exists as to the exact amount plaintiff may recover; (3) the contract caps plaintiff's recovery at $21,750; and (4) the contract is ambiguous and extrinsic evidence supports capping plaintiff's recovery at $21,750. (Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. 13-16.)

### i. Legally Binding Contract

To prevail on its breach of contract claim, plaintiff must establish that: (1) a legally binding contract existed between the parties, (2) defendant breached a material term of that contract, and (3) defendant's breach caused plaintiff to suffer damages. Tobin v. Barter, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088. "Any action to enforce a contract depends on the existence of the contract itself." Sullivan v. Porter, 2004 ME 134, ¶ 12, 861 A.2d 625. "A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." Id. at ¶ 13. The parties do not dispute that they entered into a binding contract in 2010. (Pl.'s S.M.F. ¶ 1.) Defendant has not raised a genuine issue of material fact that the parties did not enter into a legally binding contract.

ii.    Plaintiff's Performance

Plaintiff must show that it complied with the terms of the contract in order to bring a breach of contract claim. John F. Murphy Homes, Inc. v. State, 2017 ME 67, ¶ 14, 158 A.3d 921. Under the Software Development Agreement, plaintiff was required to create and launch a software application and launch mobile applications for National Parks (the Program). (Pl.'s S.M.F. ¶ 3); (Def.'s Opp. S.M.F. ¶ 3.) Defendant accepted a working prototype of the Program. (Pl.'s S.M.F. ¶ 6.) In May 2010, the Acadia Chimani app designed by plaintiff was submitted to the Apple Application Store by plaintiff. (Pl.'s S.M.F. ¶¶ 10-11); (Def.'s Opp. S.M.F. ¶¶ 10-11.) Defendant executed a certificate of acceptance in accordance with the Software Development Agreement. (Pl.'s S.M.F. ¶ 13.) Defendant has not raised a genuine issue of material fact that plaintiff did not comply with the terms of the Software Development Agreement.

Defendant argues that Apple Inc.'s subsequent rejection of plaintiff's application in the spring of 2017 constitutes a failure to perform by plaintiff. (Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. 13.) Defendant points to no contractual language that a subsequent rejection by Apple Inc. of a second application submitted by defendant would constitute a breach by plaintiff. Defendant does not dispute that it accepted the application plaintiff designed in 2010. Defendant has not raised a genuine issue of material fact that plaintiff failed to perform in accordance with the terms of the Software Development Agreement.

iii.    Defendant Breach

A "breach of a contract is cognizable when a party to the contract fails to provide the bargained-for benefit." York Cty. v. PropertyInfo Corp., 2019 ME 12, ¶ 18, 200 A.3d 803. Under the Software Development Agreement, defendant was required to pay plaintiff certain fees. (Pl.'s S.M.F. ¶¶ 4-5, 7-8.) Defendant paid plaintiff $19,714 pursuant to the Software Development

7

Agreement §§ 2(a)(i)-(iii) and made royalty payments of $384.57 in September 2010 and $539.66 in January 2011. (Pl.'s S.M.F. ¶¶ 4-5, 6-7, 15-20.) The royalty payments provision of the Software Development Agreement required defendant to pay "(14.5%) of the Net Revenue from each sale and download of the Program up to a total amount of $150,000 in the aggregate from all revenue sources derived from the Program . . . on a quarterly basis." (Def.'s A.S.M.F. ¶ 39.) Defendant paid plaintiff two royalty payments, one in September 2010 and one in January 2011. (Pl.'s S.M.F. ¶¶ 18-20.) Defendant has not claimed that it has paid plaintiff any other royalty payment in accordance with the Software Development Agreement. Defendant has not raised genuine issue of material fact as to whether defendant breached § 2(a)(iv) of the Software Development Agreement.

iv.    Contract Ambiguity

The parties dispute whether the Software Development Agreement § 2(a)(iv) caps the royalty payments at $150,000 or caps the net revenue value at $150,000. (Pl.'s S.M.F. ¶ 8); (Def.'s Opp. S.M.F. ¶ 8); (Pl.'s Mot. Summ. J. 5); (Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. 13-16.) Defendant argues that because section 2(a)(iv) caps the net revenue at $150,000 and the royalty payments are only 14.5% of the net revenue, the contract limits total royalty payments to $21,750. (Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. 13-16); (Def.'s Opp. S.M.F. ¶ 8.) Plaintiff argues that the royalty payments are capped at $150,000. (Pl.'s S.M.F. ¶ 8.)

Whether the terms of a contract are ambiguous is a question of law. Richardson v. Winthrop Sch. Dep't, 2009 ME 109, ¶ 9, 983 A.2d 400. "Contract language is only ambiguous if it is reasonably susceptible [to] different interpretations." Id. (quotation marks omitted). "When

8

a contract is unambiguous, its construction is also a question of law." Id. Contracts are interpreted according to their plain meaning. Id.

Section 2(a)(iv) provides that plaintiff will be paid "[f]ourteen and one-half percent (14.5%) of the Net Revenue from each sale and download of the Program up to a total amount of $150,000 in the aggregate from all revenue sources derived from the Program." (Def.'s A.S.M.F. ¶ 39.)

Defendant argues that the lack of a comma means that all the clauses following net revenue in section 2(a)(iv) of the Software Development Agreement are adjectives that modify net revenue and not the royalty payments, including the cap of $150,000. (Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. 13-15.) To support this argument, defendant cites O'Connor v. Oakhurst Dairy, which dealt with a state statute that exempted certain workers from a Maine overtime law. O'Connor v. Oakhurst Dairy, 851 F.3d 69, 71 (1st Cir. 2017). The provision at issue in O'Connor concerned a list of jobs that that were exempted and whether the lack of a comma before "or distribution" meant that the word "distribution" was modified by an earlier clause or was its own category of job. Id. at 71-72. The interpretation issues dealt with in O'Connor are not present in this case because section 2(a)(iv) of the Software Development Agreement does not involve a dispute over the meaning of a list of items that end without a comma before a conjunction, an Oxford comma.

For example, according to the Software Development Agreement, if the Program costs $11, and taxes and fees are $1, the net revenue for each individual sale or download is $10 and 14.5% of the net revenue from a sale or download is $1.45. This is the amount that defendant is required to pay plaintiff for each sale or download of the Program until the total amount of payments reaches the cap of $150,000. Net revenue has nothing to do with the $150,000 cap, and concerns only the

9

14.5%. In addition, net revenue is defined in the following sentence of section 2(a)(iv). A sentence that defines and caps net revenue followed by another sentence that explicitly states it is defining net revenue does not make sense. A cap on net revenue would be included in its definition and, conversely, a cap on royalty payments would be included in a sentence that describes them, such as the sentence in dispute.

Defendant has not raised a genuine issue of material fact that the Software Development Agreement is ambiguous. Section 2(a)(iv) caps royalty payments at $150,000 and not $21,750.

v.    Damages

Plaintiff claims that it should recover $149,075.77, which is $150,000.00 minus the two paid royalty payments. (Pl.'s Mot. Summ. J. 5.) Plaintiff argues that defendant has made an aggregate revenue of at least 1.2 million dollars and that 14.5% of 1.2 million dollars is well above $150,000.00 and plaintiff is, therefore, entitled to the entire amount. (Pl.'s Mot. Summ. J. 5.) Plaintiff cites a deposition of defendant's president, who testified that defendant's aggregate revenue since its beginning is at least 1.2 million dollars. (Pl.'s S.M.F. ¶ 22.)

Defendant claims that it has received only $43,841.07 of net revenue as defined in the Software Development Agreement and, therefore, plaintiff may collect only $5,432.73, which is 14.5% of $43,841.07 minus the two previously paid royalty payments. Defendant cites to its own affidavit, in which Kerry Gallivan states simply, "Chimani has received $43,841.07 in Net Revenue." (Def.'s A.S.M.F. ¶ 63.)

Net Revenue is defined in the Software Development Agreement as:

> [T]he fees actually paid to and received by [Chimani] from downloads of the Program by end-users to their iPhones net of (i) any refunds or returns, (ii) taxes paid by [Chimani] in connection with such download and (iii) any royalty amounts payable to the Application Store Provider (such as Apple Inc. in connection with the Apple Application Store) by [Chimani] in connection with such

download. . . as well as any fees paid by [Chimani] to a third party in connection with the fees of [Chimani] derived from the Program.

(Def.'s A.S.M.F. ¶ 39.) "Damages for a breach of contract are generally based on the injured party's expectation interest, defined as its interest in having the benefit of its bargain by being put in as good a position as it would have been in had the contract been performed." Ford Motor Co. v. Darling's, 2016 ME 171, ¶ 40, 151 A.3d 507 (quotation marks omitted). Neither party has included in its statement of material fact evidence relevant to the amount of the net revenue is as defined by the Software Development Agreement. Plaintiff cites a deposition, in which defendant was asked what its aggregate revenue was from its beginning to date, not its net revenue as defined in the Software Development Agreement. (Pl.'s S.M.F. ¶ 22); (Chimani Dep. 288.) As support for its proposed figure of $46,939.50, defendant cites the December 2016 affidavit of Kerry Gallivan and a 2010 estimate. (Def.'s A.S.M.F. ¶ 29.) A genuine issue of material fact exists as to the amount of net revenue as defined in the Software Development Agreement.

The entry is

> Plaintiff InfoBridge's Partial Motion for Summary Judgment on Count I of InfoBridge's Complaint is GRANTED as follows. Judgment is entered in favor of Plaintiff InfoBridge, LLC and against Defendant Chimani, Inc. on Count I, Breach of Contract on these issues: (1) a legally binding contract existed between the Parties, (2) Plaintiff complied with the terms of the contract, and (3) Defendant breached a material term of that contract. The issue remaining for trial is the amount of Plaintiff's Damages that resulted from Defendant's breach.
>
> Defendant Chimani, Inc.'s Cross Motion for Summary Judgment is MOOT on the issue of Estoppel and is DENIED on the issue of interpretation of the Software Development Agreement.

Date:   June 13, 2019

Nancy Mills
Justice, Superior Court

STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss                           CIVIL ACTION
                                         DOCKET NO. CV-16-427

INFOBRIDGE, LLC,                         RECD CUMB CLERKS OFC
                                         JUN 6 '19 PM3:46

        Plaintiff

        v.                               ORDER ON DEFENDANT'S
                                         MOTION TO AMEND
CHIMANI, INC. f/k/a                      ANSWER
CHIMANI, LLC,

        Defendant


        Before the court is defendant Chimani, Inc.'s motion to amend its answer and add affirmative

defenses. For the following reasons, the motion is denied.

I.      Procedural Background

        On November 4, 2016, plaintiff InfoBridge, LLC filed a complaint and alleged three causes

of action: count I, breach of contract; count II, quantum meruit; and count III, unjust enrichment.

Plaintiff concurrently moved for attachment and trustee process. On November 28, 2016,

defendant moved to compel arbitration and dismiss the complaint. On December 29, 2016,

defendant filed a motion to seal. On February 15, 2017, plaintiff moved for clarification on the

court's pending order on defendant's motion to compel arbitration. On March 6, 2017, the court

granted plaintiff's motion for attachment and trustee process and defendant's motion to seal but

denied defendant's motions to compel arbitration and dismiss the complaint.

        On March 9, 2017, defendant filed a notice of appeal of the court's order for attachment

and trustee process. The Law Court affirmed the judgment on October 24, 2017. InfoBridge, LLC

v. Chimani, Inc., 2017 Me. Unpub. LEXIS 92, Mem 17-93. On June 21, 2017, plaintiff moved for

clarification of the court's order for attachment and trustee process to ensure the order included

1

defendant's trademarks. On July 12, 2017, defendant moved for attachment by trustee process and moved to vacate the March 6, 2017 order granting plaintiff's motion for attachment and trustee process. On July 13, 2017, defendant filed its answer to plaintiff's complaint. Defendant also filed a counterclaim and a third-party complaint against Shaun Meredith and alleged four causes of action: count I breach of contract against plaintiff; count II, negligence against plaintiff and Mr. Meredith; count III, breach of fiduciary duty against plaintiff and Mr. Meredith; and count IV, constructive trust against Mr. Meredith. On August 2, 2017, plaintiff moved to dismiss defendant's counterclaim and third-party complaint. On January 5, 2018, defendant filed an amended counterclaim and third-party complaint, in which defendant changed count II of its original counterclaim and third-party complaint from negligence to professional negligence and added one count of negligent misrepresentation against plaintiff and Mr. Meredith.

On March 14, 2018, the court issued an order on pending motions. The court: (1) found that plaintiff's motion for clarification on the court's pending order on defendant's motion to compel arbitration was moot; (2) denied plaintiff's motion for clarification of the attachment order; (3) denied defendant's motion for attachment by trustee process; (4) denied defendant's motion to vacate the March 6, 2017 order for attachment and trustee process; and (5) denied plaintiff's motion to dismiss defendant's amended counterclaim and third-party complaint. On May 1, 2018, the court issued an order on the parties' discovery dispute regarding subpoenas that plaintiff had served on third parties.

On May 21, 2018, defendant filed a second amended counterclaim and third-party complaint against Shaun Meredith, in which no causes of action were added or removed. On July 5, 2018, the court signed the parties' proposed consent protective order. On December 27, 2018, the court issued a Rule 26(g) discovery order, in which the court required that defendant provide

2

plaintiff with a username and password for remote read only access to defendant's iOS codes. On January 16, 2019, plaintiff answered defendant's second amended counterclaim and third-party complaint.

On February 28, 2019, plaintiff filed a motion for partial summary judgment on count I of its complaint. On March 6, 2019, parties attended a court required judicial settlement conference. On March 15, 2019, defendant moved to dismiss voluntarily its counterclaim and third-party complaint against Mr. Meredith without prejudice and also moved for protection from the courts December 27, 2018 Rule 26(g) discovery order. On March 21, 2019, defendant opposed plaintiff's motion for partial summary judgment and filed a cross motion for summary judgment. On April 8, 2019, plaintiff opposed defendant's cross motion for summary judgment and replied to defendant's opposition to plaintiff's motion for partial summary judgment. On April 11, 2019, defendant moved to amend its answer and add the affirmative defenses of estoppel and waiver. On April 22, 2018, defendant replied to plaintiff's opposition to defendant's cross motion for summary judgment. On May 1, 2019, plaintiff filed an opposition to defendant's motion to amend its answer and add additional defenses. On May 6, 2019, the court issued an order denying both defendant's motion to dismiss its counterclaim and third-party complaint and defendant's motion for protection from the court's December 27, 2018 Rule 26(g) discovery order.

On May 23, 2019, parties moved for a consented to motion to dismiss defendant's counterclaim and third-party complaint against Shaun Meredith. On May 30, 2019, the court granted the parties' consented to motion to dismiss defendant's counterclaim and third-party complaint against Shaun Meredith.

3

## II.  Discussion

### A.  Defendant's Motion to Amend Answer

Defendant seeks to amend its answer to add two additional affirmative defenses, estoppel and waiver.  Defendant argues that justice requires granting its motion to amend and that plaintiff will not be unduly prejudiced.  (Def.'s Mot. to Amend 2.)  Plaintiff argues that defendant's motion is untimely and that plaintiff would by unduly prejudiced if the court grants defendant's motion to amend.  (Pl.'s Opp'n Mot. to Amend 1-2.)

Defendant claims that it was alerted to the defenses of waiver and estoppel when third-party defendant Shaun Meredith sent a letter on March 5, 2019, for indemnification pursuant to an Indemnification Agreement between defendant and Mr. Meredith.  (Def.'s Mot. to Amend 2.)  The Indemnification Agreement was included as part of defendant's conversion and stock purchase agreement on March 31, 2015.  (Def.'s Mot. to Amend 2.)  Mr. Meredith's request for indemnification prompted defendant to review its corporate offering documents.  Defendant noted that the Software Development Agreement with plaintiff was listed under the transactions and agreements sections only of the Disclosure Schedule but not under the liabilities section.  (Def.'s Mot. to Amend 3.)  Defendant argues that because Mr. Meredith, a member of Chimani, LLC, and a shareholder and officer of Chimani, Inc., had an opportunity to review the offering documents and did not ensure that the payments plaintiff is now claiming were listed under the former LLC's liabilities, Mr. Meredith and plaintiff waived those payments and/or are estopped from trying to claim them now.  (See Def.'s Mot. to Amend); (Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J.)[1]

---

[1] Defendant references its argument contained in its Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment to support its motion to amend.  (Def.'s Mot. to Amend. 1) See M.R. Civ. P. 10(c).

4

A party may amend its pleadings by leave of court and such leave "shall be freely given when justice so requires." M.R. Civ. P. 15(a). Therefore, "if the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice." Kelly v. Michaud's Ins. Agency, Inc., 651 A.2d 345, 347 (Me. 1994). "When faced with both a motion for a summary judgment and a Rule 15(a) motion to amend pleadings, considerations of finality and judicial economy suggest that a court should dispose of the pending Rule 15(a) motion prior to entertaining a summary judgment." Id. at 346.

"Waiver is a voluntary or intentional relinquishment of a known right and may be inferred from the acts of the waiving party." Blue Star Corp. v. CKF Props., LLC, 2009 ME 101, ¶ 26, 980 A.2d 1270 (quotation marks omitted). "To bar enforcement of a known right, the waiver, however established, must have induced a belief in the party who is claiming reliance on that waiver that the waiving party intended voluntarily to relinquish his rights." Id. (quotation marks omitted). Equitable estoppel "precludes a party from asserting rights which might perhaps have otherwise existed . . . against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." Dep't of Health & Human Servs. v. Pelletier, 2009 ME 11, ¶ 17, 964 A.2d 630 (quotation marks omitted).

To support its argument, defendant cites bankruptcy, patent, and security litigation cases. (See Def.'s Opp'n to Pl.'s Mot. Summ. J. & Cross Mot. Summ. J. 8-13.) Contrary to defendant's arguments, Delaware law clearly states that "[t]he conversion of any other entity to a corporation of this State shall not be deemed to affect any obligations or liabilities of the other entity incurred prior to its conversion to a corporation of this State or the personal liability of any person incurred

5

prior to such conversion." Del. Code tit. 8, § 265(e) (2017). The debt incurred by Chimani, LLC was not affected by the conversion to Chimani, Inc.

Moreover, defendant's Disclosure Schedule was created by defendant, not plaintiff and is a representation by defendant, not plaintiff. (Def.'s A.S.M.F. ¶ 42, Ex. F.) ("[Chimani] hereby represents and warrants to each Purchaser that, except as set forth on the Disclosure Schedule attached as Exhibit C to this Agreement (the 'Disclosure Schedule'), which exceptions shall be deemed to be part of the representations and warranties made hereunder, the following representations are true and complete as of the date of the Closing, except as otherwise indicated.") Defendant's waiver and equitable estoppel defenses have no merit.

The granting of defendant's motion to amend also would unduly prejudice plaintiff. Defendant attempts to raise two new defenses more than two years after plaintiff's initial complaint was filed and fewer than two months before the case is scheduled for trial. Since its initial answer, defendant has amended its counterclaim and third-party complaint twice and participated in mediation and settlement conferences without raising the defenses of waiver or estoppel. These affirmative defenses are not the result of recently discovered information and could have been raised in the initial answer. The defenses defendant proposes to add arise from a document defendant has had access to for the entirety of this proceeding. To allow defendant to raise these defenses now would potentially result in the reopening of discovery and a further delay to trial.

The entry is

> Defendant Chimani, Inc.'s Motion to Amend its Answer to Add Affirmative Defenses is DENIED.

Date: June 6, 2019

Nancy Mills
Justice, Superior Court

6

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-427

INFOBRIDGE, LLC,

      Plaintiff

v.

CHIMANI, INC.,

      Defendant

ORDER ON PENDING
MOTIONS

The court orders the following on the pending motions:

1. <u>Plaintiff's Motion for Clarification pending Order on Motion to Compel Arbitration:</u>

The motion for clarification pending order on motion to compel arbitration is moot.

2. <u>Plaintiff's Motion for Clarification of the Attachment Order:</u>

The court signed the order of attachment submitted by plaintiff. Plaintiff now seeks clarification that the order of attachment includes defendant Chimani, Inc.'s trademark. This issue was not addressed in plaintiff's motion for attachment. The motion for clarification of attachment order is denied.

3. <u>Defendant's Motion for Attachment:</u>

The motion for attachment is denied.

4. <u>Defendant's Motion to Vacate the Order of Attachment:</u>

The motion to vacate order of attachment dated March 6, 2017 is denied.

5. <u>Plaintiff and Third-Party Complaint Defendant's Motion to Dismiss Counterclaim and Third-Party Complaint:</u>

This motion was filed on August 2, 2017. Opposition was filed on January 5, 2018. By agreement of the parties, an amended counterclaim and third-party complaint was also filed on

1

January 5, 2018. In plaintiff's reply filed January 18, 2018, plaintiff addressed the amended counterclaim and third-party complaint.

Before the court is a motion to dismiss, not a motion for summary judgment or a Rule 50 motion made during trial. M.R. Civ. P. 50, 56; (see e.g., Pl.'s Reply Mem. on Mot. to Dism. 2 n.4, 3 n.5; Def.'s Surreply 2 n.2.) On a motion to dismiss, the allegations in the counterclaim and third-party complaint are considered true. See Saunders v. Tisher, 2006 ME 94, ¶ 8, 902 A.2d 830 ("we consider the facts stated in the complaint as if they were admitted"). "For a court to properly dismiss a claim for failure to state a cause of action, it must appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" Dragomir v. Spring Harbor Hosp., 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting Plimpton v. Gerrard, 668 A.2d 882, 885 (Me. 1995)).

Defendant has alleged transactions that fall within the statute of limitations for breach of contract. The court is unwilling at this stage of the proceedings, considering only defendant's allegations, to determine that defendant's tort claims cannot be sustained. See Banknorth, N.A. v. BJ's Wholesale Club, Inc. 394 F. Supp. 2d 283, 287 (D. Me. 2005).

The existence of a fiduciary relationship is fact specific. See Bryan R. v. Watchtower Bible & Tract Soc'y, Inc. 1999 ME 144, ¶ 20, 738 A.2d 839. Plaintiff relies on Maine Rubber Int'l v. Envtl. Mgmt. Group. Inc., a case decided on a motion for summary judgment. In that case, the court observed that the environmental services contract at issue did not involve a fiduciary relationship. See Me. Rubber Int'l v. Envtl. Mgmt. Group. Inc., 298 F. Supp. 2d 133, 137 (D. Me. 2004); see also Morris Resolution Trust Corp., 622 A.2d 708, 711-12 (Me. 1993).

"[W]hile generally an independent contractor does not owe a fiduciary duty to the one who engages its services, a fiduciary relationship may be found to exist if the parties understand that the

2

relationship is one of special trust or confidence." McGregor v. Hunting Specialized Coating, Inc., No. 04-73547, 2005 U.S. Dist. LEXIS 49786 at *8 (E.D. Mich. June 3, 2005). (holding that, on a motion to dismiss, a corporation had alleged facts sufficient to support a claim for breach of fiduciary duty against an individual and a limited liability company and that a fully developed record was required to make the final determination); see also Northeast Harbor Golf Club v. Harris, 661 A.2d 1146, 1148 (Me. 1995) (corporate officers and directors owe duty of loyalty to corporations they serve). The motion to dismiss amended counterclaim and third-party complaint is denied.

The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).

Date:    March 14, 2018

Nancy Mills
Justice, Superior Court

3

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-16-427

INFOBRIDGE, LLC,

       Plaintiff

v.

       ORDER ON MOTIONS

CHIMANI, INC.,

       Defendant

STATE OF MAINE
Cumberland ss Clerk's Office

MAR 06 2017

RECEIVED

Before the court are (1) plaintiff InfoBridge, LLC's motion for attachment and trustee process, (2) defendant Chimani, Inc.'s motion to compel arbitration and to dismiss plaintiff's complaint, and (3) defendant's motion to seal. For the following reasons, plaintiff's motion for attachment and trustee process is granted, defendant's motion to compel arbitration and to dismiss is denied, and defendant's motion to seal is granted.

BACKGROUND

Plaintiff filed a complaint on November 4, 2016. In the complaint, plaintiff alleged: count I, breach of contract; count II, quantum meruit; and count III, unjust enrichment. Plaintiff filed a motion for attachment and trustee process with the complaint. On November 28, 2016, defendant filed an opposition to plaintiff's motion for attachment and trustee process and a motion to compel arbitration and dismiss the complaint. Plaintiff filed an opposition to the motion to compel arbitration and to dismiss on December 19, 2016. On December 29, 2016, defendant filed a reply to plaintiff's opposition to the motion to compel arbitration and to dismiss and a motion to seal. Plaintiff filed an opposition to the motion to seal on January 11, 2017. Defendant filed a reply to plaintiff's opposition to the motion to seal on January 17, 2017.

1

## DISCUSSION

### 1. Motion for Attachment and Trustee Process

#### a. Standard of Review

Attachment and trustee process may be made if the attachment is for a specified amount and the court finds that it is more likely than not that the plaintiff will recover judgment in an amount equal to or greater than the aggregate sum of the attachment. Plourde v. Plourde, 678 A.2d 1032, 1034-35 (Me. 1996); see M.R. Civ. P. 4A(c), 4B(c). Under this standard, the moving party must show "a greater than 50% chance of prevailing." Richardson v. McConologue, 672 A.2d 599, 600 (Me. 1996) (citation omitted). "In making this determination, the court assesses the merits of the complaint and the weight and credibility of the supporting affidavits." Porrazzo v. Karofsky, 1998 ME 182, ¶ 7, 714 A.2d 826.

#### b. Analysis

Plaintiff seeks an order of attachment and trustee process against defendant's real and personal property in the amount of $149,075.77. (Mot. Attach. 1.) To prevail on its breach of contract claim, plaintiff must establish that: (1) a legally binding contract existed between the parties, (2) defendant breached a material term of that contract, and (3) defendant's breach caused plaintiff to suffer damages. Tobin v. Barter, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088.

Plaintiff supports its motion with the affidavit of Shaun Meredith. Mr. Meredith is plaintiff's principal and also served as defendant's Chief Technology Officer from 2013 until September 22, 2016. (Meredith Aff. ¶¶ 1, 13, 15.) Between April 1, 2015 and September 22, 2016, Mr. Meredith also served on defendant's board of directors. (Meredith Aff. ¶ 15.)

Plaintiff has produced a contract signed by defendant's president and plaintiff's principal. (Meredith Aff. ¶¶ 1, 5-6; Ex. A.) The parties entered into the contract on February 11, 2010.

2

(Meredith Aff. ¶¶ 4-6; Ex. A to Meredith Aff.) The contract provided that plaintiff would design, create, and develop for defendant an iPhone-based software application and expansion architecture for other mobile platforms (the program). (Meredith Aff. ¶ 7.)

The contract provides in part that defendant will pay to plaintiff: "Fourteen and one-half percent (14.5%) of the Net Revenue from each sale and download of the Program up to a total amount of $150,000 in the aggregate from all revenue sources derived from the Program including, but not limited to: sales, downloads, advertising fees, and volume purchasing agreements." (Meredith Aff. ¶ 9; Ex. A § 2(a)(iv).) The contract further provides that payment will be made "on a quarterly basis not later than one (1) month after the end of each calendar quarter." (Meredith Aff. ¶ 10; Ex. A § 2(c).)

Plaintiff performed its obligations under the contract. (Meredith Aff. ¶ 11.) Defendant paid plaintiff $384.57 in September 2010 and $539.66 in January 2011. (Meredith Aff. ¶ 12.) By letter dated September 27, 2016, plaintiff informed defendant that defendant was in breach of the contract and demanded payment of $149,075.77. (Meredith Aff. ¶ 30; Ex. D to Aff.) By letter dated October 2, 2016, defendant responded that plaintiff's demand was invalid. (Meredith Aff. ¶ 31; Ex. E to Aff.)

Plaintiff has shown it is more likely than not that plaintiff will recover judgment in an amount equal to or greater than $149,075.77. See M.R. Civ. P. 4A(c). Further, the affidavit provided by defendant in opposition to plaintiff's motion does not dispute these facts. (See Lambert Aff.)

3

2. Motion to Compel Arbitration and to Dismiss

    a. Standard of Review

Maine's Uniform Arbitration Act "requires that when there is a complaint or motion to compel arbitration, the matter should proceed to arbitration unless there is a bona fide dispute about the existence of the agreement to arbitrate." Macomber v. Macquinn-Tweedie, 2003 ME 121, ¶ 12, 834 A.2d 131. "Maine has a broad presumption favoring substantive arbitrability, which dictates a conclusion that a dispute has been subjected to arbitration if (1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement." Roosa v. Tillotson, 1997 ME 121, ¶ 3, 695 A.2d 1196. Doubts should be resolved in favor of arbitrability. V.I.P., Inc. v. First Tree Dev., 2001 ME 73, ¶ 4, 770 A.2d 95 (citation omitted).

    b. Analysis

Section 12.3 of the contract provides:

> **Settlement of Disputes.** In the event of any dispute or disagreement between the parties, either with respect to the interpretation of any provision of this Agreement or with respect to performance by Customer or by InfoBridge hereunder, except for a dispute or disagreement involving the substantial breach of this Agreement, each of the parties will appoint a designated officer to meet for the purpose of endeavoring to resolve such dispute. No formal proceedings for the resolution of such dispute, except for the seeking of injunctions or other equitable relief from a court of appropriate jurisdiction, may begin until the parties' have attempted to resolve such dispute amongst themselves for a period of ten (10) days. In the event the parties cannot resolve the dispute by negotiation within such ten (10) day period, either party may submit the dispute to binding arbitration under the expedited commercial arbitration rules of the American Arbitration Association then in effect.

(Ex. A § 12.3 (emphasis added).) The underlined language makes clear that the parties specifically exempted from the arbitration provision any dispute involving a substantial breach of the contract. Plaintiff has brought a breach of contract claim alleging that defendant has failed to

4

make payments under the contract. (Pl.'s Compl. ¶¶ 27-33.) As a result, plaintiff's claims are not subject to arbitration.

Defendant's argument that plaintiff's claims are subject to arbitration because they involve a dispute with respect to the interpretation of the contract is unpersuasive. (Def.'s Reply to Pl.'s Opp'n to Mot. Compel Arbitration 2-3.) That arbitration provision applies only to those disputes that involve interpretation of the contract's provisions or the parties' performance and do not involve an alleged substantial breach of the contract. Defendant's argument that the alleged breach is not substantial because defendant is liable for at most $21,750.00 is equally unpersuasive. (Id. at 3-6.) Regardless of the amount of defendant's potential liability, plaintiff's allegation that defendant has failed to pay plaintiff the amount owed under section 2(a)(iv) represents a dispute involving a substantial breach of the contract.

3. Motion to Seal

Defendant requests that the court seal the following documents: (1) exhibits B and C to plaintiff's complaint, (2) Mr. Meredith's affidavit and accompanying exhibits, and (3) Kerry Gallivan's affidavit and accompanying exhibits, submitted with defendant's reply to plaintiff's opposition to defendant's motion to compel arbitration and to dismiss. (Def.'s Mot. Seal 1); see M.R. Civ. P. 79(b)(1). Defendant represents, under oath, that these documents "contain sensitive financial information about Chimani, Inc., its financial relationship with its customers and other information about its business plans that would provide Chimani's competitors with an advantage to the harm of Chimani." (Def.'s Mot. Seal 1.) The contract recognizes that information related to the contract may be confidential. (Ex. A to Compl. § 12.4.) Defendant has shown an interest in maintaining the confidentiality of these documents.

5

make payments under the contract. (Pl.'s Compl. ¶¶ 27-33.) As a result, plaintiff's claims are not subject to arbitration.

Defendant's argument that plaintiff's claims are subject to arbitration because they involve a dispute with respect to the interpretation of the contract is unpersuasive. (Def.'s Reply to Pl.'s Opp'n to Mot. Compel Arbitration 2-3.) That arbitration provision applies only to those disputes that involve interpretation of the contract's provisions or the parties' performance and do not involve an alleged substantial breach of the contract. Defendant's argument that the alleged breach is not substantial because defendant is liable for at most $21,750.00 is equally unpersuasive. (Id. at 3-6.) Regardless of the amount of defendant's potential liability, plaintiff's allegation that defendant has failed to pay plaintiff the amount owed under section 2(a)(iv) represents a dispute involving a substantial breach of the contract.

3. Motion to Seal

Defendant requests that the court seal the following documents: (1) exhibits B and C to plaintiff's complaint, (2) Mr. Meredith's affidavit and accompanying exhibits, and (3) Kerry Gallivan's affidavit and accompanying exhibits, submitted with defendant's reply to plaintiff's opposition to defendant's motion to compel arbitration and to dismiss. (Def.'s Mot. Seal 1); see M.R. Civ. P. 79(b)(1). Defendant represents, under oath, that these documents "contain sensitive financial information about Chimani, Inc., its financial relationship with its customers and other information about its business plans that would provide Chimani's competitors with an advantage to the harm of Chimani." (Def.'s Mot. Seal 1.) The contract recognizes that information related to the contract may be confidential. (Ex. A to Compl. § 12.4.) Defendant has shown an interest in maintaining the confidentiality of these documents.

5

The entry is

Plaintiff's Motion for Attachment and Trustee Process is GRANTED.

Defendant's Motion to Compel Arbitration and to Dismiss is DENIED.

Defendant's Motion to Seal is GRANTED.

Date:  March 6, 2017

Nancy Mills
Justice, Superior Court

6